**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-56

UNITED STATES TAX COURT

TORAINO HARDNETT AND MARVELL PRESTON-HARDNETT, Petitioners
v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3459-12S.                    Filed July 15, 2013.

Toraino Hardnett and Marvell Preston-Hardnett, pro sese.

Derek P. Richman, for respondent.

SUMMARY OPINION

GUY, Special Trial Judge:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $7,948 in petitioners' Federal income tax for 2008 and an accuracy-related penalty of $1,590 under section 6662(a).  Petitioners, husband and wife, resided in Florida at the time they filed their petition for redetermination with the Court.

The issues for decision are whether petitioners:  (1) are entitled to deductions of $4,725 for professional fees and $10,328 for vehicle expenses reported on Schedule C, Profit or Loss From Business, (2) are entitled to a $25,000 loss reported on Schedule E, Supplemental Income and Loss, and (3) are liable for an accuracy-related penalty under section 6662(a).  To the extent not discussed herein, other issues are computational and flow from our decision in this case.

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code (Code), as amended, for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

During 2008 Mr. Hardnett was employed as a police officer, and Ms. Preston-Hardnett, a real estate agent, was employed as an independent contractor by Remax Hometown, Inc. (Remax).

## I. Petitioners' 2008 Tax Return

Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for 2008.

### A. Schedule C

Petitioners attached to their return a Schedule C for a business operated as a sole proprietorship identified as JM Partners Realty (JM Partners). The Schedule C identified Ms. Preston-Hardnett as the proprietor of JM Partners and reported gross receipts of $11,102, various expenses totaling $20,583 (including $4,725 for professional fees and $10,328 for vehicle expenses), and a net loss of $9,481.

#### 1. Professional Fees

Ms. Preston-Hardnett obtained her real estate sales license in 2002 and began working as a real estate sales agent for Remax in December 2005. She testified that Remax required its sales agents to pay a monthly fee of $350 to

maintain an affiliation with the firm. The record includes monthly statements from Remax indicating that Ms. Preston-Hardnett paid a total of $4,809 to the firm during 2008. The statements list the balance due each month and the dates and the amounts of payments, but they do not describe the nature or source of any of the individual charges. The statements show that Remax routinely charged $350 to Ms. Preston-Hardnett's credit card account, on the 24th or the 25th day of each month, for the 10 months including January through September and December 2008. The October and November statements, however, varied from this pattern in both the amounts of the charges and the timing of the payments.

## 2. Vehicle Expenses

Ms. Preston-Hardnett reported on Schedule C that she drove 20,451 miles while conducting real estate sales and supervising repair work on an investment property (described below), 28,871 miles while commuting, and 8,420 miles for "other" activities. On part IV of Schedule C, she checked the box for "NO" in response to the question whether she had records to support the reported vehicle expenses. Applying a rate of 50.5 cents per mile, Ms. Preston-Hardnett reported total vehicle expenses of $10,328.[2]

---

[2]The Commissioner generally updates the optional standard mileage rate annually. See sec. 1.274-5(j)(2), Income Tax Regs. Rev. Proc. 2007-70, sec. 5.01,
(continued...)

Ms. Preston-Hardnett testified that she maintained an "At-A-Glance" day planner and a notebook to record the mileage that she drove for business purposes during 2008. The day planner and the notebook include entries listing the dates that Ms. Preston-Hardnett met with real estate clients, the names of the clients, and the number of miles driven for each meeting. Ms. Preston-Hardnett testified that she normally recorded information in the day planner and the notebook contemporaneously, i.e., on a daily basis after the meetings took place.

Under cross-examination by respondent's counsel, Ms. Preston-Hardnett acknowledged that some of the entries in the notebook had been altered (i.e., the portion of the date indicating the year was obliterated) and that one of the entries is for a date in 2010. In addition, the day planner included an order form which provided a convenient way for the owner to purchase a new day planner for the coming year. In this case, the order form was for the calendar year 2014, a fact that completely undermined Ms. Preston-Hardnett's testimony that she recorded information in the day planner contemporaneously in 2008.

---

[2](...continued)
2007-2 C.B. 1162, 1164, established a standard mileage rate of 50.5 cents per mile effective for transportation expenses incurred on or after January 1, 2008. The standard mileage rate was modified midyear, however, by Announcement 2008-63, 2008-2 C.B. 114, which increased the standard rate to 58.5 cents per mile for transportation expenses paid or incurred on or after July 1, 2008.

B. Schedule E

Petitioners attached to their return a Schedule E for a residential property (duplex) which petitioners purchased as an investment property in December 2007.  Petitioners reported that they received no rents from the duplex during 2008 but incurred expenses totaling $37,211, including insurance charges of $1,800, management fees of $360, mortgage interest of $9,251, repairs of $21,800, and supplies of $4,000.  Petitioners reported a deduction of $25,000 for a rental real estate loss on Schedule E and on Form 8582, Passive Activity Loss Limitations.

Ms. Preston-Hardnett testified that the duplex was in need of substantial repair when they purchased it and that she spent a good part of 2008 overseeing its renovation.  In this regard, she stated that she hired and supervised various contractors as they performed electrical and plumbing work, replaced drywall, windows, and doors, installed new flooring, renovated the kitchen and a bathroom, and repaired the roof.  The record includes numerous receipts from hardware and plumbing supply stores totaling approximately $1,429 for miscellaneous items purchased from January through March 2008.  Petitioners did not produce invoices, receipts, or canceled checks in respect of repair work performed on the duplex, nor did they offer any records to substantiate the insurance charges, management fees, or most of the supplies expense reported on Schedule E.

Respondent acknowledged at trial that petitioners paid mortgage interest of $9,251 on the duplex during 2008.

Although petitioners testified that they attempted to rent the duplex in the latter half of 2008, they did not produce any direct evidence to substantiate the claim. Ms. Preston-Hardnett listed the property for sale on a multiple listing service on August 6, 2008, and the listing expired on September 30, 2008. Petitioners eventually rented the duplex to a tenant in early 2009.

## II. Tax Return Preparation

Petitioners' return was prepared by Ortem Tax Florida Services, Inc. Although petitioners believed that their return preparer was a certified public accountant, they later learned that he was not. Ms. Preston-Hardnett did not provide the return preparer with any mileage logs but instead provided a summary of the number of miles she purportedly drove for business purposes.

Petitioners signed the return at the preparer's office, and it was filed electronically. The return preparer did not review the return with petitioners, nor did they review the return for accuracy on their own before signing it.

## III. Notice of Deficiency

Respondent disallowed the deductions for (1) professional fees of $4,725 and vehicle expenses of $10,328 that petitioners reported on Schedule C, and (2)

the $25,000 rental real estate loss they reported on Schedule E. In addition, respondent determined that petitioners are liable for an accuracy-related penalty under section 6662(a).

Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[3]

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). A taxpayer

---

[3]As discussed in detail below, petitioners did not comply with the Code's substantiation requirements and have not maintained all required records. Therefore, the burden of proof as to any relevant factual issue does not shift to respondent under sec. 7491(a). See sec. 7491(a)(1) and (2); Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001).

claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. Sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90.

When a taxpayer establishes that he or she paid or incurred a deductible expense but fails to establish the amount of the deduction, the Court normally may estimate the amount allowable as a deduction. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). There must be sufficient evidence in the record, however, to permit the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Under section 162(a), a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. See Commissioner v. Heininger, 320 U.S. 467, 475 (1943). A deduction normally is not available for personal, living, or family expenses. Sec. 262(a).

Section 274(d) prescribes more stringent substantiation requirements before a taxpayer may deduct certain categories of expenses, including expenses related

to the use of listed property as defined in section 280F(d)(4).  See Sanford v.

Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969).  As

relevant here, the term "listed property" includes passenger automobiles.  Sec.

280F(d)(4)(A)(i).  To satisfy the requirements of section 274(d), a taxpayer

generally must maintain records and documentary evidence which, in

combination, are sufficient to establish the amount, the date, and the business

purpose for an expenditure or business use of listed property.  Sec. 1.274-5T(b)(6),

Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

I.  Schedule C

  A.  Professional Fees

Petitioners claimed a deduction of $4,725 for professional fees that Ms.

Preston-Hardnett purportedly paid to Remax to maintain her affiliation with the

firm.  Professional fees paid or incurred in carrying on a trade or business

generally are deductible pursuant to section 162(a).  See, e.g., Westby v.

Commissioner, T.C. Memo. 2004-179.

The record includes monthly statements indicating that Ms. Preston-

Hardnett paid a total of $4,809 to Remax during 2008.  The statements list the

balances due and the dates and amounts of payments, but they do not describe the

nature or source of any of the charges.  The statements reflect that during the 10

months including January through September and December 2008 Remax

routinely charged $350 to Ms. Preston-Hardnett's credit card on the 24th or 25th

day of the month.  The October and November statements, however, varied from

this pattern in both the amounts of the charges and the timing of the payments.

Respondent contends that Ms. Preston-Hardnett failed to prove that the

charges listed on the Remax statements were for professional fees.  Although the

statements do not describe the nature or the source of the charges in question, Ms.

Preston-Hardnett testified credibly that she paid $350 per month to Remax to

maintain her affiliation with the firm.  With the exception of the statements for

October and November, the record supports her testimony.  Considering all the

facts and circumstances, we hold that petitioners are entitled to a deduction of

$3,500 for professional fees.

B.  Vehicle Expenses

A taxpayer is entitled to deduct transportation expenses incurred in carrying

on a trade or business.  Commuting expenses, however, incurred in going from a

taxpayer's residence to his or her place of business and returning are

nondeductible personal expenses.  Commissioner v. Flowers, 326 U.S. 465 (1946).

When a taxpayer uses a vehicle for personal as well as for business purposes, he or

she must allocate expenses between personal and business use in accordance with

the strict substantiation requirements of section 274(d).  Sec. 280F(d)(4)(A)(i);

sec. 1.274-5T(d)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46025 (Nov. 6,

1985).

Ms. Preston-Hardnett reported that she drove 20,451 miles for business

purposes during 2008.  Although we have little doubt that Ms. Preston-Hardnett

incurred vehicle expenses to meet with real estate sales clients, we give no weight

to the notebook or the day planner as evidence of the miles that she actually drove

for these purposes.  Ms. Preston-Hardnett's testimony that she recorded mileage in

the notebook and the day planner contemporaneously during 2008 was wholly

discredited on cross-examination.  In sum, we conclude that petitioners failed to

satisfy the strict substantiation requirements for vehicle expenses imposed by

section 274(d).  See sec. 1.274-5(j)(2), Income Tax Regs. (providing that the

heightened substantiation requirements for vehicle expenses must be met even

where the standard mileage rate is used).  Consequently, respondent's

determination disallowing the vehicle expenses petitioners reported on Schedule C

is sustained.

II.  Schedule E

Petitioners reported on Schedule E and on Form 8582 a $25,000 rental real

estate loss associated with the duplex.  The $25,000 amount is a derivative of the

expenses totaling $37,211 reported on Schedule E, comprising insurance charges of $1,800, management fees of $360, mortgage interest of $9,251, repairs of $21,800, and supplies of $4,000.

Petitioners failed to produce any bills, receipts, or bank records to substantiate the insurance charges or management fees, and there is no evidence to permit the Court to estimate the amounts of any deductions for those items. Petitioners also failed to produce any bills, receipts, or bank records to substantiate the repair expenses and most of the supplies expense. In any event, Ms. Preston-Hardnett correctly acknowledged at trial that most, if not all, of the expenditures made in connection with the general rehabilitation of the duplex were capital and were not currently deductible in 2008. See sec. 263(a)(1); see also Smith v. Commissioner, 300 F.3d 1023, 1036 n.14 (9th Cir. 2002), aff'g Vanalco, Inc. v. Commissioner, T.C. Memo. 1999-265; sec. 1.162-4, Income Tax Regs.[4]

On the other hand, respondent acknowledged that petitioners paid mortgage interest of $9,251 in respect of the duplex during 2008. Consequently, we must consider whether petitioners are entitled to a deduction for that amount.

---

[4]Petitioners did not offer any evidence that they were entitled to a depreciation deduction in respect of the duplex for 2008.

Taxpayers are allowed deductions for certain business and investment expenses under sections 162 and 212. Section 469(a), however, generally disallows passive activity losses and credits. A passive activity loss is defined as the excess of the aggregate losses from all passive activities for a taxable year over the aggregate income from all passive activities for that year. Sec. 469(d)(1). A passive activity is any activity that involves the conduct of a trade or business or the expenses of which are deductible under section 212, in which the taxpayer does not materially participate. Sec. 469(c)(1), (6)(B). A taxpayer shall be treated as materially participating in an activity only if the taxpayer is involved in the operations of the activity on a regular, continuous, and substantial basis. Sec. 469(h).

Although rental activity is generally treated as a passive activity regardless of whether the taxpayer materially participates, see sec. 469(c)(2), (4), the Code provides exceptions and special rules for taxpayers engaged in rental real estate activities, see sec. 469(c)(7), (i).

Petitioners rely on section 469(i), which provides that a taxpayer who actively participates in a rental real estate activity may deduct a maximum loss of $25,000 per year related to the activity. The term "rental activity" is defined as any activity where payments are principally for the use of tangible property. Sec.

469(j)(8); sec. 1.469-1T(e)(3)(i), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).  An activity involving the use of tangible property will not be considered a rental activity for a taxable year, however, if for such taxable year the average period of customer use for such property is seven days or less.  Sec. 1.469-1T(e)(3)(i)(A), (ii)(A), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988); see Scheiner v. Commissioner, T.C. Memo. 1996-554.

The record reflects that petitioners did not rent the duplex during 2008, nor did they receive any payments for the use of the duplex that year.  It follows that petitioners were not engaged in a rental activity for purposes of section 469(c)(2), and no deduction for a rental real estate loss is available to them under section 469(i).  Sec. 1.469-1T(e)(3)(i)(A), (ii)(A), Temporary Income Tax Regs., supra; see Hoskins v. Commissioner, T.C. Memo. 2013-36, at *10.

Under the circumstances, the duplex is considered a trade or business or an income-producing activity.  See Lapid v. Commissioner, T.C. Memo. 2004-222. In this regard, petitioners may still be eligible to deduct losses associated with the duplex if they materially participated in the activity within the meaning of section 469(c)(1).  See Hoskins v. Commissioner, at *15-*16; Lapid v. Commissioner, T.C. Memo. 2004-222.  As previously discussed, that question turns on whether

Ms. Preston-Hardnett was involved in the operations of the activity on a regular, continuous, and substantial basis. See sec. 469(h).

Section 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988), establishes seven distinct tests for determining whether a taxpayer has materially participated in an activity. Taxpayers can prove the extent of their activity through any reasonable means, which may include, but are not limited to, the identification of services performed over a period of time and the approximate number of hours spent performing such services. Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).

Although Ms. Preston-Hardnett testified that she spent a considerable amount of time during 2008 supervising contractors who were performing renovation work on the duplex, she did not produce any records to substantiate the repair expenses of $21,800 or most of the $4,000 of supplies expense reported on Schedule E; nor did she offer the Court an approximation of the number of hours she spent conducting the activity. Considering all the facts and circumstances, we are unable to conclude that Ms. Preston-Hardnett materially participated in the duplex activity within the meaning of section 469(h) and the temporary regulations cited above. Consequently, petitioners' real estate activity in respect

of the duplex is subject to the passive activity loss limitations under section 469, and we sustain respondent's determination disallowing all losses related thereto.

III. Accuracy-Related Penalty

Section 6662(a) and (b)(1) imposes a penalty equal to 20% of the amount of any underpayment attributable to negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with tax laws, and "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c). Negligence also includes any failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.; see Olive v. Commissioner, 139 T.C. 19, 43 (2012).

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

A taxpayer may be able to demonstrate reasonable cause and good faith (and thereby escape the accuracy-related penalty of section 6662) by showing reliance on professional advice. See id. However, reliance on professional advice is not an absolute defense to the section 6662(a) penalty. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991). A taxpayer asserting reliance on professional advice must prove that: (1) the adviser was a competent professional with sufficient expertise to justify reliance; (2) the taxpayer provided the adviser necessary and accurate information; and (3) the taxpayer actually relied in good faith on the adviser's judgment. See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). As a defense to the penalty, petitioners bear the burden of proving that they acted with reasonable cause and in good faith. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

With respect to a taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Id. Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the

Commissioner's determination is incorrect.  Id. at 447; see Rule 142(a); Welch v.

Helvering, 290 U.S. at 115.

Respondent discharged his burden of production under section 7491(c) by

showing that petitioners failed to keep adequate records and properly substantiate

their claimed expenses.  See sec. 1.6662-3(b)(1), Income Tax Regs.

Although petitioners relied on a paid tax preparer and trusted him to

properly prepare their tax return, there is no evidence in the record regarding the

return preparer's experience or qualifications that would support the conclusion

that they reasonably relied on him.  The record also shows that the return preparer

did not review the return with petitioners, nor did petitioners review the return on

their own.  Taxpayers have a duty to review their tax returns before signing and

filing them, and the duty of filing accurate returns cannot be avoided by placing

responsibility on a tax return preparer.  Metra Chem Corp. v. Commissioner, 88

T.C. 654, 662 (1987); Magill v. Commissioner, 70 T.C. 465, 479-480 (1978),

aff'd, 651 F.2d 1233 (6th Cir. 1981).  Finally, the record indicates that petitioners

did not provide necessary and accurate information to their return preparer.  In

sum, on the record presented, we are unable to conclude that petitioners acted with

reasonable cause and in good faith within the meaning of section 6664(c)(1).

Accordingly, respondent's determination that petitioners are liable for an accuracy-related penalty under section 6662(a) is sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.